THE STATE OF DELAWARE,

*vs.*

GEORGE P. EDDY.

*New Castle, April,* 1861.

Breach of an injunction against the further drawing of a lottery punished, under the circumstances, by imprisonment two weeks and until the drawings should cease.

ATTACHMENT FOR BREACH OF AN INJUNCTION.—The defendant, one of the firm of Wood, Eddy & Co., who claimed to draw a lottery under authority of a certain act of the

General Assembly, was attached for breach of an injunction issued on the 5th of April, 1861, restraining Wood, Eddy & Co. from the further drawing of lotteries under said act. Upon the examination of the defendant under interrogatories it appeared that the injunction was first served upon him on the evening of the 5th of April by the officer reading to him the beginning of the writ and the conclusion or mandatory part; that he took the writ, examined and read a portion of it, but without being served with a copy. On the next morning (April 6th) the sheriff's officer served the defendant with a copy of the writ, but without then shewing the original. The lotteries continued to be drawn in Wilmington, as before, until April 8th inclusive, after which the drawings were made at Covington, in Kentucky, for the purpose of deciding schemes devised under the Delaware State lottery. The defendant, as stated in his examination, was the only member of the firm resident in Wilmington. His counsel was absent from the city at the service of the injunction and did not return until the next afternoon. Under these circumstances the defendant did not stop the drawings. He disclaimed all intention to commit a contempt of court.

On the 15th of April, 1861, the defendant was brought before the Chancellor, and being examined under interrogatories,

*G. B. Rodney* and *N. B. Smithers*, moved for his discharge.

They insisted that there had been no sufficient service of the writ; that the first service was defective because no copy was left; and the second also, because then the original was not exhibited. *Blake's Chan. Prac.* 402.

Supposing the service to be sufficient, it was admitted that there had been a technical contempt; but it was

wholly without design, and greatly mitigated by the peculiar circumstances. The defendant was the youngest member of the firm and alone; his partners absent; his counsel also absent. They had a large business, with subcontracts to be affected by suddenly stopping the drawings. It might involve large forfeitures for the violation of contracts already made—and depending on the drawings. Under these embarrassments and being without counsel he only did not interfere to stop the drawings. Contempts must be intentional and the defendant may therefore well be discharged. But, at all events, the punishment should be light, being measured not with a view to deter others but according to the deserts of the party under the circumstances.

*D. M. Bates* (representing the Attorney General) for the State.

The service of the writ, taking all that was done by the officer, was ample. The original writ was exhibited and was examined by the defendant on April 5th; a copy was delivered the next morning. The service was thereby complete. The case, then, presents these points :

1. *The duty of the defendant.*—It was to stop the drawing, instantly and every where. Want of counsel was no excuse. The writ spoke for itself and was intelligible. Nor is it enough to say that he did nothing. He was bound to interfere. The acts of his agents were his acts. Their drawing was his drawing.

2. *The breach of duty.*—It commenced with his permitting the drawing on the evening of the 5th of April, and has continued ever since. The drawings in Kentucky are equally a breach of the injunction, which forbade the drawing of any lottery under color of the law of this State. As to the drawings in Kentucky he was not passive. He

made arrangements for them, and set the wheel in motion there, so as to evade the injunction.

3. *The measure of punishment.*—The question is not one of motive but of public policy   The contempt which is punishable is not disrespect to the judge or tribunal; but it is the willful disobedience to judicial process; and the present is a most flagrant instance of it.   The punishment should be such as will effectually prevent a recurrence of such contempts, and secure prompt obedience to the process of the court; and with this view should be by imprisonment as well as fine.   Such parties can well afford to pay money—only imprisonment will effectually deter them.

In this case the contempt continues, since it does not appear that the drawings in Kentucky have ceased.   The order should, therefore, be such as to enforce obedience by committing the defendant until the drawings cease every where.

HARRINGTON, CHANCELLOR.—I have no difficulty in deciding that the defendant has been guilty of a contempt; but rather how to adjust the punishment.   The contempt is admitted by the defendant in his frank reply to the interrogatories.   I am, therefore, embarrassed only by the extent of the order I shall make, which must treat the defendant as a voluntary and deliberate contemner of the process of the Court, and yet also as one who has promptly surrendered himself to its jurisdiction, frankly and fully answered its interrogatories and sought to excuse, without denying, the contempt.   The order, with all just consideration for these mitigating circumstances, must still be such as to vindicate the authority of this Court and ensure obedience to its process.

The Court orders the imprisonment of the defendant for two weeks and until he shall thereafter satisfy the Court that he obeys the injunction.